### REES *v.* SMITH.

Defendant in chancery having answered to the merits, without objecting to the jurisdiction, and having obtained an order to stay the proceedings until the decision of another suit involving the same merits, shall not afterward object to the relief in equity that there is remedy at law.

Where a party has substantially, but not literally, complied with his contract, equity will interpose and aid him in obtaining justice.

Rees *v.* Smith.

The bill was brought by the assignee of the vendor of a tract of land, against the purchaser, to obtain a decree for the balance of the purchase money, or a rescinding of the contract. The facts were these : Ludwick Wolfley, James Hunter, John Hunter, Morris Rees, Solomon Rees, Thomas Rees, and Noah Zane were proprietors in unequal proportions of sec. 11, T. 14, R. 19, situate in Fairfield county. The land having been entered at the Chillicothe land office, an agreement was made between the parties that the patent should issue to Zane, who gave a bond to each of the others to convey him his share of the land when the patent was obtained.

In June, 1810, before the patent issued, Solomon Rees sold his 125] *tract of land to the defendant, Smith, as eighty acres, at eleven dollars and fifty cents per acre. Thirty dollars to be paid in hand ; four hundred and thirty in September following, and the residue in three equal annual installments. The title to be made in September when the payment was made, and if not then made, Rees to give security for the title to be made in a reasonable time. Possession to be given to Smith in the ensuing October, if required. This agreement was reduced to writing, and executed by both the parties.

Upon this contract Smith paid forty dollars at the time of execution ; two hundred and fifty dollars on the 27th of October, 1810, and one hundred and thirty in November following; and was put in possession of the land. Rees not having obtained a deed from Zane, in October, 1810, executed a bond to Smith for the title, with Thomas Rees and Jesse Rees as security, conditioned for making a title so soon as a regular survey could be made. Upon this bond the Reeses indorsed an order to Zane to make the title to Smith. The bond and order was presented to Zane, who indorsed upon the bond a promise and an engagement to make the deed to Smith.

After this a survey of the section was made, when it was found not to contain the full quantity. The proprietors all agreed to apportion the loss among themselves, allowing to Smith his full quantity of eighty acres.

In August, 1812, Zane, Smith, and all the proprietors, met for the purpose of executing and receiving deeds. By the consent of all concerned, Zane conveyed to Ludwick Wolfley, James Hunter, John Hunter, and Morris Rees, their several tracts of the land by metes and bounds. At the same time he executed a deed to Smith

for the eighty acres purchased of Solomon Rees, the descriptive terms of which are as follows: "being part of section 11, T. 14, R. 19, containing eighty acres, the line to run on the south boundary of the said eighty acres so as to include the two small fields south of the road, and to run the line as near the said fields as may be practicable, so that the line including said fields may be a straight line—thence to run east and west for the basis of the said eighty acres. The body of said eighty acres lying north of the run near Solomon Rees'. dwelling-house." Smith received this deed, and gave up to Zane the bond executed by the three Reeses, and upon which Zane had indorsed his agreement to convey to Smith. At the same time Zane executed to the heirs of Thomas Rees a deed for all the residue of the section, reserving for himself fifty-five acres eighty-six poles in the northeast corner.

*These deeds Zane took with him to Virginia to complete [126 them by adding his wife's relinquishment of dower. When those deeds were returned, Smith took the one for him to his attorney, who advised him that it was too vague and uncertain in description to be valid; upon which Smith refused to accept it, and left it in the attorney's hands.

The balance of the purchase money remaining unpaid, in February, 1813, Solomon Rees assigned Smith's covenant to the complainant, and, Smith refusing to pay, the complainant brought suit at law upon the covenant. Smith defended the suit and resisted a recovery, upon the ground that Solomon Rees, not having executed the deed in September, according to the terms of the covenant, could not recover at law—and upon that ground obtained a verdict; after which this suit in equity was commenced.

Smith put in his answer without making or stating any objection to the jurisdiction of the court, and in his answer suggested that he was defendant in another suit in chancery, between other parties, in which the boundaries of the land were drawn in question, and praying that proceedings might be stayed until that suit was determined. An order was accordingly made to stay the proceedings, and they were stayed until the suit in question was decided, which settled the boundaries, as Smith, in his answer in that case, had claimed. This cause was then proceeded in to final hearing in the common pleas of Fairfield county, when a decree was made that the defendant should pay the balance of purchase money with interest. From this decree the defendant appealed to

133

the Supreme Court, and the whole case was reserved for decision in this court.

No argument was submitted on the part of the defendants. For the complainant an elaborate argument was presented by Mr. Ewing. But as the principles relied on, and the reasonings urged, are substantially adopted by the court in the opinion, it is deemed unnecessary to report Mr. Ewing's argument.

Opinion of the court by Judge BURNET:

Two questions are presented in this case: 1. Has the court jurisdiction? 2. Has the contract been performed on the part of Rees, so as to entitle him to the relief prayed for?

As to the first inquiry, it is manifest that the subject matter of the contract comes properly within the province of a court of chancery. The defendant might have sustained a bill for specific performance, or to rescind; and it is contended with some force, 127] that this right *must be so far reciprocal as to authorize the vendor to sustain a bill where the covenants on his part have been substantially, though not literally, performed, and the party claiming a strict performance, is in the full and secure enjoyment of the thing contended for. A punctilious performance of the *minutia* of a contract, is not always required in equity, though the want of it may present a difficulty in a court of law. If the conditions have been substantially performed, and the benefits of the contract fully secured to the opposite party, equity has considered it sufficient. But in this case the defendant, by answering and putting the merits in issue, has submitted to the jurisdiction, and the court, at this stage of the proceedings, may go on and decide as the equity of the case may require. He has not only acquiesced, but has obtained a stay of proceedings till the fate of another bill should be known, to which he was a defendant, and by which he might lose a part of the premises purchased of the complainant. The existence of that suit, and the possibility of a recovery, were relied on as an important part of his defense. The court so considered it, and he was indulged with a delay. That suit has been decided in his favor, and now, for the first time, an exception is taken to the jurisdiction of this court. To indulge the defendant in this course, would seem to be trifling with justice. It has been repeatedly decided, that an objection to the jurisdiction of chancery comes too late, after a defendant has answered and contested the

Rees *v.* Smith.

merits. If he do not demur to the relief, the court will decree for the complainant on the hearing. Gilbert's History and Practice of Chancery, 219. In the case of Ludlow *v.* Simond, 2 New York Cases in Error, 56, this doctrine is asserted and supported, both by reason and precedent.

The twenty-sixth section of the act directing the mode of proceeding in chancery is also relied on. That section provides, "That after answer filed and no plea in abatement to the jurisdiction of the court, no objection, for want of jurisdiction, shall ever after be made, nor shall the court ever thereafter delay or refuse justice, or reverse the proceedings for want of jurisdiction, except in cases of controversy respecting land lying out of the jurisdiction of such court." Without undertaking to decide how far this section will control or affect the provision contained in the second section of the same act, by which the chancery powers of this court are created and limited, we may safely say that in a case circumstanced like the present, it may be relied on with propriety and effect.

On the part of the defendant, it is urged that the complainant's *remedy, if any exist, is at law; but we can not shut our eyes [128 on the fact, that the remedy at law has been extinguished by a judgment rendered against the complainant by a court of competent jurisdiction, on the ground alleged by the defendant, that Solomon Rees had not complied with his contract. The defendant having succeeded on that ground, now attempts to defeat the application here, by maintaining the converse of the proposition. The words of the statute defining the jurisdiction of courts of chancery, relate to the time of filing the bill. If the complainant has not then a complete and adequate remedy at law, it would seem that the legislature intended to afford him the aid of chancery; nor does there appear to be anything in the statute making it necessary to inquire whether at any former period a legal remedy did or did not exist. It is one of the peculiar provinces of equity to grant relief in cases of fraud and accident, and it is worthy of inquiry, whether both of these circumstances are not to be found in the present case. The defendant admits that, in the trial at law, he denied the existence of a legal remedy, and having succeeded in that defense, obtained a judgment. He now attempts to defeat the application on the equity side of this court, by advancing the converse of that proposition. Although he admits that the facts re-

main as they were, he contends that there was a remedy at law, and that this court can not therefore grant relief. The accidental circumstance, that the plaintiff's remedy at law has been destroyed by the practice of the defendant, ought rather to strengthen than to weaken his claim to the aid of this court.

As the statute admits the jurisdiction of courts of chancery, in cases where there is not an adequate remedy at law, it is difficult to perceive how that jurisdiction should be affected by showing that a legal remedy once existed, which has since been lost, without the fault or laches of the defendant. It is alleged, and such appears to be the fact, that the plaintiff in the court below being an assignee, had no knowledge of the bond and security given by Solomon Rees to the defendant in October, 1810, or of the order on Zane for a deed, or of his acceptance of that order, which circumstance seems to account for his failure in the suit at law.

Circumstanced as this case now is, it must be admitted that the remedy at law, to say the least of it, is both doubtful and difficult, which has been generally considered as a sufficient ground for chancery to retain a cause.

In order to determine the second inquiry, it is necessary to attend 129] *more particularly to the facts. By the contract of June, 1810, Solomon Rees was bound to deliver possession of the land in October, and to make the title deed in September, or to give satisfactory security that the same should be made in a reasonable time. It is admitted that possession was delivered, and that in October a bond was given, with security, to Smith, for the execution of the deed. At the time of the contract Smith knew that the fee of the entire section of which the land in question was a part, was in Noah Zane, in trust for Rees and the other proprietors. On the breach of the bond, Rees drew an order on Zane in favor of Smith for the deed, which order Zane accepted, and bound himself to execute the deed. Some time after, Zane, Smith, and the other proprietors met, and agreed on the manner in which deeds should be executed by Zane to each of the claimants, of which meeting and agreement the complainant appears to have had no knowledge. In pursuance of this agreement, Zane executed and delivered deeds to each of the parties for their respective shares. At the time Smith received his deed, or at the time it was executed, he gave up to Zane the bond and security given by Solomon Rees, together with the order on Zane and his acceptance. By the execution and delivery of these

deeds, the whole of the land was disposed of, and from thenceforth it became impossible for the complainant to procure, or for Zane to execute to the defendant any other deed than the one which had been executed. By the agreement and the deeds executed as above, all the boundaries of the defendant's tract were fixed and certain, except the northern line, which has since been determined and settled by a decree of this court, according to the claims and pretensions of the defendant, who is and has been, since that decree, in the quiet and peaceable possession of the land. The description of the land, as contained in the deed to Smith, appears to be confused and uncertain; but that uncertainty may be removed by reference to the other deeds executed at the same time, and to the decree before mentioned.

The defendant alleges that when he agreed to the execution and delivery of the deeds, and when he accepted his own, it was with a mental reservation, that if his counsel did not approve of it, he would not retain it or consider it a discharge of the contract; which determination, however, was unknown to Zane or the other parties concerned, till after the delivery of all the deeds, by which it became impossible for the complainant to procure for him any other.

From this state of the case, it appears that the complainant has *failed to show a literal performance of the contract, though [130 he has performed it substantially, and in the way assented to by the defendant. The bond and security was to have been given in September, but it was not furnished till October, when it was received without objection, accompanied with an order on Zane for a deed, in pursuance of which order a deed was executed and delivered, and the bond and accepted order given up to be canceled. This would not have been done, had not the defendant considered the bond as executed in time, and the execution and delivery of the deed as a discharge of its condition. Having thus received the security, and availed himself of it, a court of chancery will not lend a willing ear to a mere technical informality. Another objection is to the description of the land as set forth in the deed. This defect may be attended with some inconvenience on the ground of uncertainty, but it may be obviated and rendered certain by a reference to the deeds and decree before stated; and in addition to this consideration, we can not but perceive that the difficulty has been produced by the defendant's own conduct, and that it can not now be remedied either by the complainant or by

Noah Zane. He saw the deed and agreed to accept it, and at the same time consented that the deeds to the other proprietors should be delivered, one of which conveyed to the heirs of Thomas Rees all the residue of the section not included in the previous deeds. The fee of the whole section having thus passed out of Zane, with the exception of his own tract, lying remote from the one in question, should the deed to the defendant be given up, as contended for, the title to his portion of the tract must vest in the heirs of Thomas Rees. This difficulty having been produced by the act of the defendant, without the agency or even the knowledge of complainant, it should not now be charged to his account, or made a pretext for withholding from him the consideration, which, it is admitted, he would have been entitled to, had the covenants on his part been literally performed. In equity, a substantial performance may be good, whatever objections it might be liable to in a court of law, and we are all of opinion that such a performance has been made out in the present case, and that so far as this performance has deviated from the letter of the covenants, the deviation is to be ascribed to the defendant himself.

We consider it no objection to the decree in this case, that it is for the payment of money only. Such decrees are frequent. The case of Turner *v.* Dayton and others, decided at the last term, in Champaign, is in point. The bill was filed for a specific perform-131] ance. *The allegations of the bill were sustained, but Dayton having sold the land to his co-defendants, who had purchased for a valuable consideration without notice, a specific performance could not be decreed. The court, however, having become legally possessed of the case, refused to turn the plaintiff round, retained the cause, and under the general prayer for relief decreed to the complainant the value of the land, which was admitted to be the sum for which it had been sold, and which was then in the hands of the defendant, Dayton. It is true that in that case the court were influenced, in some measure, by the consideration that the complainant might affirm the sale and hold the vendor liable to account as a receiver.

As to the first objection, we are of opinion that, independent of all other considerations, the doubt and difficulty that would attend an application on the common law side of the court, would justify us in retaining the bill. Such circumstances are entitled to much consideration, and many cases are to be found in which they have

been deemed sufficient to support the jurisdiction of a court of equity (see New York Cases in Error, 54, and the cases there cited); but when taken in connection with other matters existing in this case, they seem to place the question in a very clear point of light as to the second objection. It would be unjust and inequitable to permit the defendant, Smith, to hold and enjoy the land, and also to retain the consideration which was to have been paid for it. The title having been conveyed to him by the trustee, on the order of Rees, the complainant has effectually and forever lost the land, and we can not discover any outstanding title or claim that can affect or in any shape trouble the defendant. It would be equally unjust to permit him to take an exception to the form of the deed, when that form was the result of an agreement between himself and the trustee, entered into without the knowledge of complainant. and by which he has effectually put it out of the complainant's power to remedy the defect.

Upon the whole, we can not discover any valid objection to the decree prayed for in this case. Decreed accordingly.