## ANSLEY v. CARLOS.

1. An intention to defraud creditors by a purchaser, will vitiate a public as well as a private sale. The fact merely, that a mortgagee gave notice at an execution sale of his mortgage, and was thereby enabled to buy the property at a reduced price, is not necessarily a fraud upon creditors. To be such, the deed must have been covinous, or there must have been such a concert with the defendant in execution, as to create a trust between them.

2. A judgment is evidence even for or against strangers to it,[of the fact that such a judgment was rendered.

3. Evidence of unsatisfied judgments, is competent testimony to raise a presumption of insolvency.

4. The record which the clerk is required to make, of all the prooceedings in a suit, is the final record of the cause, answering to the judgment roll of the common law, and is the only legal evidence of the judgment, to be established by the production of the record itself, an examined copy, or a copy attested by the clerk.

5. Whilst the cause is progressing, the papers are quasi records, and until the final record is made, the papers and proceedings in the cause are evidence, and the best evidence of the facts they import.

Writ of Error to the Circuit Court of Macon.

THIS cause was before this court at its last term, (see statement and opinion 8 Ala. Rep. 900,) and appears from the record to have been the trial of the right of property pursuant to the statute. On the 10th September 1844, a *fieri facias* was issued from the County Court of Macon at the suit of the defendant in error, against the goods, &c. of John Bedell and Thomas M. Robinson, and on the 24th December thereafter, was levied upon a negro man named Harry, as the property of Robinson. A claim was interposed to this slave by the plaintiff in error, and a bond executed with sureto try the right; an issue being made up, as required in such cases, the cause was submitted to a jury, who returned a verdict declaring the slave subject to the execution, assessing his value, and ten per cent. damages, on the ground that the

claim was made for delay; and the judgment was rendered accordingly.

A bill of exceptions was sealed at the instance of the claimant, which recites that the claimant adduced no evidence; that it was proved on the part of the plaintiff, that the slave in question was sold by a constable of Macon county, on the first Monday in July, 1844, at the regular place of sale, after having advertised for the time and in the manner required by law. These executions were issued by a justice of the peace against the goods, &c. of Robinson, the principal, and the claimant, his surety in forthcoming bonds. It was further proved, that the slave was pointed out to the constable by the claimant, and that the latter attended the sale, together with some twenty persons. When the slave was offered, the claimant presented a paper to the constable and crowd who were present, saying it was a mortgage on him in his favor. By the previous request of the complainant, one Lanier bid off the slave at fifty dollars, although he was then worth four hundred dollars, but the claimant took the benefit of the bid, paid the fifty dollars, and at Lanier's request, the constable executed to him a bill of sale.

The plaintiff then introduced a witness who was present at the sale, who testified that in a few days thereafter he had a conversation with the claimant about the small price at which he purchased the slave, when claimant said he cost him one hundred and fifty dollars, but the witness could not have purchased him for less than four or five hundred dollars, as he (claimant) was surety for Robinson, he would have made him sell for that much. Witness further testified, that claimant said Robinson was a good fellow, and he would like to help him. To the evidence of this witness claimant objected, but his objection was overruled.

The plaintiff in execution proved the making of the notes on which the judgments, the foundation of his executions were rendered, and also adduced several notes, and the writs and declarations thereon, at the suit of other persons, against Bedell and Robinson jointly, and Robinson individually. To each and all of these the claimant objected, but his objection was overruled.

The plaintiff next offered in evidence the final record of

the proceeding had and judgment rendered by the Circuit Court of Macon, at the fall term, 1844, in favor of a third person, and against Robinson, for $221 19, without producing the original papers or accounting for their absence. This evidence was also objected to, but the grounds not being stated or called for, the objection was overruled, and the evidence admitted.

S. F. RICE, for the plaintiff in error, made the following points: 1. A purchase by a constable, sheriff, or any other person at a sale under execution, although fraudulent, cannot be collaterally impeached. The title passes by such sale, and no interest is left in the defendant which can be levied on. [Creagh v. Forwood, and Abercrombie v. Conner, at this term; Foster v. Mabe, 4 Ala. Rep. 402; Wier v. Humphries; Id. 442; Love and Williams v. Powell. 5 Ala. Rep. 58.]

2. The notes, writs and declarations were irrelevant and consequently inadmissible—the claimant not being a party to them. Washburn's Dig. § 10; Innerarrity v. Byrne, 8 Porter's Rep. 176; The State v. Wisdom, Id. 511; Brown & Boisseau v May, 1 Munf. Rep. 288; Mardis' Adm'r v. Shackleford, 4 Ala. Rep. 501.

3. The final record was inadmissible, unless the original was lost. The writs, declarations, &c. in file are the originals. [Petty v. Walker, at this term; Clay's Dig. 144, § 7; see also, 8 Porter's Rep. 469; 1 Ala. Rep. 104, 7 Id. 185, 698; 22 Maine Rep. 442.] The statute under which the record is made up, does not change the common law rules of evidence. [3 Ala. Rep. 286; 16 Vin. Ab. 464-5.]

4. Records of judicial proceedings are admissible only against parties and privies. The claimant was neither the one or the other, and the error in receiving the final record, could not be cured, that the facts recited in it were otherwise legally proved. See 3 Stew. Rep. 247; 7 Porter's R. 466; 8 Id. 258; 9 Id. 412; 1 Id. 313.

COCKE, for the defendant in error.—1, If the purchase of Ansley, at the constables sale was not *bona fide*, but fraudulent as to the creditors of Robinson, the defendant in error had a right, under the issue, to impeach it, on that ground,

before the jury. [Horton v. Smith, 8 Ala. 73 ; Carlos v. Ansley, 8 ib. 900.]

2. If the sale by the constable to Ansley was under a collusive arrangement between Ansley and Robinson to defraud the creditors of Robinson, it stood on no higher ground than a private sale, and it was competent for the defendant in error to impeach it before the jury. [Duncan, et ux. v. Forsyth, 3 Dana, 231 ; Stephens, adm'r, v. Barnett, adm'r, 7 ib. 259 ; Myers, et al. v. Sanderson, 7 ib. 524.]

3. The levy of the sheriff on the negro, in the absence of any proof to the contrary, is *prima facie* evidence that the negro, at the time of the levy, was in the possession of Robinson, one of the defendants in execution. [Bickerstaff, v. Patterson, 8 Porter, 245 ; Lucas & Brooks v. Goodwin, 6 Ala. 631 ; 1 Phil. on Ev. 391.]

4. The testimony of Abercrombie, in connexion with the other testimony in the cause, was admissible, as conducing to show that the purchase of Ansley was not *bona fide*, but collusive and fraudulent, and colorable merely.

5. The original note on which defendant in error had obtained his judgment, with the original papers in the suit, were properly admitted in evidence, to shew that he was a creditor at the time of the constable's sale, and the other notes, original papers, and final record, were admissible to shew Robinson's then indebtedness, to create the presumption of his insolvency, and, in connexion with all the other testimony in the cause, as tending to shew that the purchase by Ansley was fraudulent, collusive, and colorable merely.

6. " It is a general rule, which admits of no single exception, that originals are good evidence, where copies would be admitted." [King v. Kenney, 4 Ham. 83—cited, United States Digest, 223, § 394.]

7. *The final record,* in the suit of a third person, was admissible in evidence. [1 Phill. Ev. 383-4-5 ; 1 Starkie's Ev. 151-4.]

ORMOND, J.—The counsel for the plaintiff in error contends, that the court erred in the admission of the testimony tending to prove fraud in the constable's sale, upon the authority of the cases of Creagh & Forwood v. Savage, and

Costillo & Keho v. Thompson, at this term. In the first of these cases, we held that the purchase by a sheriff at his own sale, was not void, but voidable merely. In the last, the trustee in a deed of trust at a sheriff's sale, where the trust property, consisting of a house and lot, was levied on, gave notice of the existence of the deed, purchased in the property at a reduced price, and received the sheriff's deed. The property being again levied on, as the property of the grantor, we held that the sale was not void, although the intention of the trustee, by giving notice of the deed, was to enable him to buy in the property at a sum below its value.

When this case was here at a previous term, Carlos v. Ansley, 8 Ala. 900, the question presented upon the record, was, whether the adverse possession of Ansley, acquired by his purchase at the constable's sale, secured the property against a subsequent levy upon it, as the property of Robinson, the defendant in the execution. The court below held, that it did, and took from the jury, the consideration of the facts offered in evidence, to establish a fraud in the purchase by Ansley, at the constable's sale. In reference to which this court said, "we will not undertake to pass judgment upon the acts and declarations of the claimant, (Ansley,) in directing the slave to be levied on, then appearing on the day of sale, exhibiting his mortgage, and forbidding the constable to proceed, in consequence of which the slave sold for about one-eighth part of the sum he would otherwise have commanded. But the existence of these facts, are of such a character, that it should have been left to the jury, to inquire, whether the claimant was influenced by integrity of purpose, or whether his intention was to defraud the creditors of Robinson, by purchasing the slave at a depreciation."

It is evident from this extract, that the cause was sent back to have a trial upon the *bona fides* of the purchase at the constable's sale. If the claimant used his mortgage, with the intent to defraud the creditors of Robinson, he can derive no benefit from his purchase—the sale is void. It certainly was not the intention of this court, in the decisions referred to at the present term, or in any previously made, to decide that an intention to defraud creditors, would not vacate a public, as

well as private sale. What we did intend to say, was, that a *bona fide* mortgagee, giving notice of his mortgage, and purchasing the property at a reduced price, would not of itself be a fraud upon creditors, though he might intend by the notice to get the property at a less price than it would otherwise have sold for. The use of his mortgage, by a mortgagee, for the purpose of defrauding the creditors of the debtor, necessarily supposes an understanding, or combination with him. Thus, in this case, it appeared, that Ansley pointed out the property for levy to the constable, and then appeared at the sale, produced his mortgage, forbade the sale, and was thus as it appears, enabled to buy in the slave for much less than his value, adding his mortgage debt to the price paid at the sale. These, with the other facts in evidence, authorized the jury to infer, that the sale was a mere contrivance, got up between Ansley and Robinson, for the purpose of defrauding the creditors of the latter.

The difference between this case, and that of Costillo & Keho v. Thompson, is, that there was no fact in that case connecting Costillo with the defendant in execution. He merely gave notice at the sale of his deed, and if the effect, or design of giving such notice, was, that the property was sold at a reduced price, it was not necessarily a fraud upon Keho's creditors. To be such, the deed must have been covinous, or there must have been such a concert with Keho, as to create a trust between the parties.

From this examination, it follows, that the testimony offered in evidence tending to establish the fact, that the sale was fraudulent, was strictly proper, and should not have been excluded from the jury.

Although the general rule is well established, that judgments are not evidence, except between the same parties, or those in privity with them, yet it is equally certain, that evidence may be given of the fact of the judgment against third persons, not as evidence of the facts upon which the judgment is founded, but to prove the fact that such a judgment was rendered. For this purpose, and to prove the fact merely, that such a judgment was rendered, every judgment is evidence against the whole world. See this subject considered by Mr. Starkie, 1 vol. 188.

The evidence of unsatisfied judgments against Robinson, was competent testimony, to raise the presumption of his embarrassed condition, much more satisfactory indeed, than proof of the reputation of facts, or circumstances, from which insolvency may be inferred, which would be admissible in such a case. [Lawson v. Orear, 7 Ala. 784.]

The ancient common law method of perpetuating judgments, was by engrossing the proceedings on parchment, which is called the judgment roll, and is the record, and the only evidence of the judgment. Rex v. Smith, 8 B. & C. 341; Porter v. Cooper, 6 Carr. & P. 354; Ib. Rex v. Bowman, 101.

In most of the States of this Union, the ancient common law judgment roll has gone out of use, or rather was never adopted, and other methods have been devised to perpetuate the judgment. In this State we have a statute, (Clay's Dig. 144, § 7,) making it the duty of the clerks of the several courts, " within three months after the final determination of any suit, or prosecution, to make up and enter in well bound books to be kept by him for that purpose, a full and complete record of all the proceedings in such suit or prosecution." This is doubtless the final record, answering to the judgment roll of the common law. Until this record is made, the papers of the cause must of necessity be evidence of the facts they contain, but when this necessity ceases, by the enrolment by the clerk, it becomes the final record of the cause, importing absolute verity, and is not only conclusive evidence, but the only legal evidence of the judgment to be established by the production of the record itself, an examined copy, or a copy attested by the clerk.

Whilst the papers and proceedings are in *fieri*, they are *quasi* records, and with us, have always been considered the highest evidence of the facts they import. By a statute of Ohio, it is provided, " that the clerk of each court, shall in vacation, make a complete record of the writ, recognizance of bail, pleadings, orders, judgments, or decrees, in each case finally determined at the preceding term, in a book provided for that purpose; which record shall be signed by the President, or psesiding Judge of said court, at the next succeeding term of said court." This statute has a close resemblance to

ours, and in its construction, it has been held, that the record when made, is conclusive, and cannot be contradicted by the minutes of the court. [Harvey v. Brown, 1 Ohio Rep. 129.] And that until such final record is made, the minutes of the court and papers in the cause, are legal evidence. [State v. Davidson, 6 Id. 251.]

The original papers which were offered in evidence, were not legal evidence, if the final record in these cases was made by the clerk. How that fact was, does not appear in the bill of exceptions, as no reason was offered for their rejection. We must therefore presume that such was not the fact, as otherwise, if the objection had been made, either the final record would have been produced, or the fact distinctly stated, that it had not been made up. It is the duty of parties complaining of error to point it out distinctly, upon the record.

From this examination it appears there is no error in the record, and the judgment must be affirmed.

COLLIER, C. J.—When I prepared the opinion in this case at the last term, I expressed myself in language indicative of my true meaning. It is probable, that in laying down the law as a guide to the primary court, I may have went a little farther than the facts of the case required. But if this be so, I am by no means sure that I would consent to abate any thing from what was then said. I find it difficult to reason myself to the conclusion that the fraud even of a *bona fide* mortgagee, in purchasing the mortgaged property at a sale under execution, would not so affect him as to prevent him *in virtue of his purchase*, from acquiring a title as against the creditors of the defendant in execution. That he may exhibit his mortgage at such a sale, and purchase the property in order to obtain a title, or to make his mortgage a more available security, is what I do not doubt. But where the *bona fides* is doubtful, I incline to think it should be referred to the jury; and this, although there is no proof to implicate the defendant in execution in an intention to procure a benefit for himself, or to defraud his creditors. This was my opinion at the last term, and I merely reiterate it, that it may be seen that I have not yielded it up, or even qualified it.

It may perhaps, under the facts of the case, be unnecessary to say more. In affirming the judgment of the Circuit Court, I concur with my brethren.