## BROWN v. ISBELL.

1. B., by a contract in writing, transferred to I. a note made by L. for the payment of $2,000, which was past due, stipulating that it should be *first paid* from the proceeds of certain lands, &c., which L. bought from B., and for the sale of which B. had filed a bill in chancery, &c.: *Further*, that if the lands, &c., did not bring the amount of the note when sold under the decree in chancery, then B. would pay the deficiency: *Held*, that in declaring upon the contract, it is sufficient to alledge that the decree had been rendered in the chancery suit, that the lands, &c. had been sold under its authority, that the amount produced by the sale was insufficient to pay the note, and what the deficiency was; without alledging that B., who was the complainant in chancery, had notice of these facts: *Further*, that the contract being a writing, separate from and independent of the note, could not be treated as an indorsement thereof.

2. It is competent for the plaintiff, under the act of 1837, to sue out an ancillary attachment, not only where a suit is commenced by summons or *capias ad respondendum*, but where an original attachment is the leading process in the cause; yet it would perhaps be to quash the ancillary attachment, or the levy thereof, where the estate of the defendant levied on under the original, was unquestionably ample to satisfy the plaintiff's demand.

3. The original papers in a cause are not admissible evidence, if the final record has been made up as required by the statute.

4. Where the plaintiff declares upon a written contract which assigns a bill single, sets it out *in extenso* and stipulates to pay it, if the means of payment shall not be provided by another source, he will not be required to

127

produce it at the trial—its production not being necessary to entitle him to recover, and it not appearing to have been in his possession.

5. Parol evidence of contemporaneous stipulations is inadmissible to control or vary the legal effect of a written instrument; but where the writing is incomplete and does not profess to set out the entire contract, parol evidence has been received to prove the part omitted. So if the writing merely contains an acknowledgment of *value received*, without stating what it was, it is competent for the party sued on it, to show what the consideration was, and that it has failed, either in whole or in part.

6. R., upon the payment to B. of the sum of $550, was entitled to receive $800, being part of the amount of a note which B. as the payee, held against L.; B's agent received the $550 of I, and assigned him the note by a separate writing, stipulating that B. should pay it to I, if the latter failed to collect it by the sale of certain property of L.—I. at the same time had other demands against R., which by the advance of money made for him, he professed to collect from the proceeds of the note: *Held*, if I. was merely substituted for R. in accepting the assignment, or received it in trust for R's benefit, either in whole or in part, and it can be inferred he became the assignee under an agreement that such sets off, as B. was the proprietor of, beyond the $800 against R. should be allowed, then these sets off would be admissible in an action by I. against B. on the assignment. But in the absence of an agreement upon this point, either express or implied, the indebtedness by R. to B. is not admissible as a set off to diminish the recovery of I.

7. Evidence that an assignee holds a paper in trust for another, and not in his own right, does not contradict the assignment, and in a proper case is admissible.

8. Where it is shown or can be intended that a paper is in the possession of a party and in court, so that it can be produced without delaying the trial, a notice at the trial will perhaps be sufficient to let in secondary evidence of its contents, if it is not produced.

9. A party cannot defeat a recovery against himself by alledging that a judicial proceeding in which he was the actor was irregular, where the action against him is founded on a contract by which he stipulated to prosecute it to a close, and a decree was rendered and executed previous to the institution of the action.

10. Where the report of a sale by a register in chancery is confirmed, the confirmation relates back to the time of the sale, so that an action instituted between the two periods, founded upon a contract by the complainant, to make good what the sale failed to produce short of a certain sum, is not prematurely brought.

11. Where a prayer for instructions to the jury, is predicated of evidence not before them, it should be denied.

12. Where the assignee of a note simultaneously with the assignment, receives of a third person a note for the amount which he advanced for him,

and which induced the assignment, it cannot be assumed that such note has been paid; but if it has, the assignee may still maintain an action against the assignor for the benefit of the party paying it.

Writ of Error to the Circuit Court of Talladega.

THIS action was commenced by original attachment at the suit of the defendant in error, against the plaintiff as a non-resident debtor, which was levied on a wagon and gear. Afterwards an ancillary attachment was issued and levied on three slaves, particularly described in the return. The first count of the declaration is upon a writing set out according to its tenor as follows, viz: "For value received, I transfer and indorse to James Isbell, to be first paid out of the proceeds of the sale of the lands and mills which the Longs bought from me in the year 1840, and for the sale of which said lands and mills, I have filed a bill in the chancery court at Talladega, the following described note, to wit: '$2,000. By the 25th December, one thousand eight hundred and forty-two, we or either of us promise to pay Warner Brown or order, two thousand dollars, for value received. Witness our hands and seals, this 14th February, 1840. John Long, (Seal,) James Long, (Seal,) Wm. F. Long, (Seal.)' Said note is entitled to a credit of four hundred and fifteen dollars and fifty cents. Said note has been presented to the administrators of Wm. F. Long's estate, both in Alabama and Tennessee, and filed with the clerk of the county court of Talladega county. If the said lands and mills do not bring the amount of the above described note when sold by the decree of the chancery court, then, in that event, I bind myself to make good all deficiency which shall or may accrue on such sale, 24th July, 1844. Warner Brown, by W. W. Knox, his attorney in fact."

The declaration then proceeds to alledge that a decree was rendered in the suit in chancery referred to in the writing above set forth, directing a sale of the land and mills in parcels at, &c. for cash. From the proceeds the Register was directed, first to pay a sum due N. & H. Weed & Co., with the costs thereon; then the costs of the suit; and last-

ly, the note described in the writing declared on. It is then averred that a sale of the premises was made pursuant to the decree, previous to the commencement of this action, and that the sum thereby produced was only one hundred and twenty-seven dollars; that the amount reported to be due to N. & H. Weed & Co., was fourteen hundred and twenty-five dollars and twenty-three cents, besides costs; so that there was nothing that was, or could be appropriated to the plaintiff's demand, &c. By means whereof the defendant became liable, &c.; thereupon in consideration of the premises, the debt promised, &c. The second count embraced the common counts in *assumpsit*. To the first count the defendant demurred, and his demurrer was overruled.

The defendant moved to quash the *ancillary attachment*, because the *original attachment* had been levied on goods of the defendant, and by summoning a supposed debtor of his as a garnishee, which motion was overruled and the defendant excepted. Thereupon the cause was submitted to a jury on issue joined, a verdict was returned for the plaintiff and judgment thereon rendered. A bill of exceptions was sealed on the trial, at the instance of the defendant, which presents the following points: 1. The plaintiff offered in evidence the writing declared on, and the defendant objected to its admission on the ground that it varied from the description in the first count, and was incompetent under either count; but his objection was overruled, and the paper permitted to go to the jury. 2. The plaintiff then produced the original papers, viz: the bill, report of the register, decree, &c. in the chancery suit to which the writing referred; all which were admitted in despite of an objection by the defendant, though it appeared that a final record had been made of them by the register as directed by the statute. 3. The specialty executed by the Longs and described in the instrument declared on, was not produced at the trial, or its absence accounted for; but Knox proved that he made that instrument as the attorney in fact of the defendant pursuant to an authority. This witness being cross-examined by the defendant, stated that he was appointed by the defendant when he removed from this State, his attorney, that the defendant left with him the control of the note on the

Longs, informing him that he had indorsed for one Riddle, and had claims against him, which, if Riddle should afterwards have a right of action against him, (Brown) would reduce his right to recover upon the note, to some six or eight hundred dollars. Witness testified that Riddle had made some unsuccessful efforts to raise five hundred and fifty dollars, which he was bound to pay to Brown before he was entitled to the note upon the Longs. Riddle and plaintiff had an interview, and plaintiff called upon witness to learn how the matter of account stood between the defendant and Riddle in respect to the note; to which witness answered in the presence of Riddle, that upon the payment by the latter of $550, he would be entitled to the note; that if its amount was not realized from the chancery suit, then Riddle would have recourse upon defendant; that defendant had sets off against the note, which would leave Riddle's interest in it from six to eight hundred dollars; and when the $550 were paid it would be a good demand against the defendant for the six or eight hundred dollars. Witness also informed the plaintiff that he had authority to make the contract which he executed. Plaintiff objected to all the evidence of this witness, except so much as affirmed his authority as the defendants agent, and the execution of the instrument, on the ground that it varied the terms of the writing. Witness further stated that plaintiff said Riddle was indebted to him, that he would advance the $550 and take his interest in the note; thereupon plaintiff paid that sum and witness executed the writing declared on. Plaintiff at the same time took Riddle's note for $550, and what he was otherwise indebted to him, which note was attested by witness. Defendant then gave notice to plaintiff to produce the last named note, but it was not produced, though the trial was in progress for some hours afterwards. This was all the evidence adduced by either party.

The court charged the jury as follows: 1. The papers in the chancery cause showed that the land had been sold, and no part of the note set out in the guaranty had been realized; this made the conditional guaranty an absolute promise, and the plaintiff was entitled to a verdict for the amount guaranteed, with interest thereon; and it was not necessary that

the plaintiff should prove a notice to the defendant of the non-payment of the note from the proceeds of the sale of the land. 2. That the jury could not regard the testimony of the witness Knox as to any verbal understanding which would vary the terms of the written contract.

The defendant's counsel prayed the court to charge the jury as follows. 1. That if they believed all the evidence admitted, that they should find for the defendant. 2. If the plaintiff has not produced the note made by the Longs, and described in the writing declared on, or accounted for its non-production, then they should find for the defendant. 3. If the jury believe there was any fraudulent intent on the part of the plaintiff towards the defendant, or Knox as his attorney in taking the instrument made by the latter, then they ought not to find for the plaintiff more than eight hundred dollars and interest thereon from its date. 4. That the sale of the lands shown by the chancery papers was void: *Further*, that it was not such a sale as the instrument contemplated. 5. If the statements and representations which Knox testified that he made to the plaintiff before the latter advanced his money are true, then the plaintiff is not entitled to recover more than six or eight hundred dollars, with interest. 6. If Riddle paid to plaintiff the note which Knox proves he gave him, then the plaintiff cannot recover. Each of these charges were refused, and the defendant excepted to the refusals and the charges given.

S. F. RICE, for the plaintiff in error, made the following points: 1. The demurrer should have been sustained, because the first count does not alledge a non-payment by the Longs of their note—it does not aver that they were insolvent, or that a demand was made of them—nor does it show that the note was unpaid by them, or unextinguished by the proceeds of the land sold. [2 Ala. Rep. 373.] *Again*, the contract sought to be enforced, is an irregular indorsement of an assignable instrument; and the same rules apply to such a transfer as to an indorsement in the ordinary course of business. [1 Ala. Rep. 471; 3 Id. 610, 648; 4 Id. 110; 6 Id. 746; Hines v. Mullikin, at this term; 7 Mass. Rep. 480.]

2. An ancillary attachment can only rightly issue in a suit

commenced by process which is required to be personally served on the defendant. It can only issue for matters accruing after the suit is brought, and certainly not after the levy of an original attachment.

3. A restitution bond, such as the statute requires where there are infant defendants, was not executed previous to a sale under the decree, though there were minor defendants whose interests were affected. For this cause the decree was void *in toto*, and is not validated by the subsequent confirmation of the register's report. [4 Hump. R. 273; 5 Ala. R. 158.] If the decree is valid, the sale by the register is not complete, until it is confirmed by the chancellor, [4 Hump. R. 371]; and the fact might be shown under the general issue, to defeat the action as prematurely brought. 9 Ala. R. 754.

4. After the final record was made up in the chancery cause, the original papers were not admissible evidence. [8 Miss. R. 115; 9 Ala. R. 973.]

5. The plaintiff was bound to know the extent of Knox's authority as the agent of the defendant, and Knox's statements made to him before he advanced his money were admissible to show the nature of the contract, [4 Ala. R. 194; 1 Id. 161, 436; 5 Porter's R. 498; 8 Id. 114]; and perhaps warrant the inference that the instrument sued on was obtained by the fraud of the plaintiff.

6. If the note of the Longs was paid even by a stranger, it discharged the defendant from all liability to the plaintiff; and the payment of Riddle's note would have the same effect. [10 Pick. R. 121.]

7. The failure to produce the note of the Longs, or the note of Riddle to the plaintiff, tended to establish their payment, and also the fraud of the plaintiff. However weak it may have been, its effect should have been permitted to go to the jury. [8 Metc. R. 436; 8 Ala. R. 900.]

L. E. PARSONS, for the defendant in error, insisted, that the suing out of an original attachment was the commencement of a suit, and might be followed by an ancillary attachment. [7 Ala. 601; Clay's Dig. 61, § 34.] The refusal to quash on motion is not revisable on error. [2 Stew. & P.

406; 5 Id. 158; 3 Ala. 57; 6 Id, 154.] And being addressed to the discretion of the court, a *mandamus* to compel the circuit court to grant the motion will not be granted. See cases collected in 2 Kinnie's Law Com. 138-9.

The irregularities in the suit in chancery, if any, proceeded from defendant's neglect—it was his duty to have executed a sufficient refunding bond, and if he omitted it, he cannot make his omission a defence to this action. If there is a variance between the instrument set out in the first count and that given in evidence, it is immaterial; especially as it is set out under a *videlicit*. See 2 Ala. 525; 6 Id. 151. The plaintiff's right of action was complete as soon as it was ascertained by the sale under the decree, that the note of the Longs was paid *in toto*—to entitle him to sue, it was not necessary that he should have prosecuted an action on that note. [20 Johns. R. 365; 7 Peters, 113; 10 Id. 482; 1 Ala. 473; 2 Id. 375.]

The defendant was the actor in the chancery suit, and knew that the sale of the lands did not produce a sufficient sum to pay the note; it is not necessary for the plaintiff to aver a notice, where a matter does not lie more properly within his knowledge than that of the defendants. [1 Chit. Pl. 320, and note K; 10 Mass. R. 230, 230.] In respect to the testimony of Knox, it tended to add to and vary a written contract, complete in itself; and was therefore rightly excluded. [Minor, 270, 357, 363; 1 Stewart, 425; 3 Id. 40, 87, 201; 2 Porter, 29; 1 Ala. 42, 164, 358; 2 Id. 135; 4 Id. 664; 9 Id. 513, 527.] There was no evidence from which fraud could be imputed to the plaintiff; but if there was, it could not prejudice the right to recover, unless there was an offer by the defendant to return to the plaintiff the money he had advanced. [2 Ala. 749.] The original papers in the suit in chancery were admissible, though the final record was made out. [1 Ala. 540; 4 Id. 158; 6 Id. 710.]

Where evidence is conflicting, the court may with propriety refuse to charge the jury, if they believe all the evidence in the cause, they should find for the one party or the other. [1 Ala. 117.] The non-production of the notes of the Longs and Riddle, could have no effect upon the rights of the par-

ties—if Riddle was willing to trust his funds in the plaintiff's hands, the defendant cannot object that he should not perform his contract; especially as he does not show, that Riddle is his debtor.    [4 Ala. 367; 5 Id. 383.]

COLLIER, C. J.—The first count of the declaration is at least substantially sufficient.    It professes to set out the contract of the parties according to its tenor.    This contract may be thus briefly stated : the defendant, by his attorney in fact, assigns to the plaintiff a bill single previously made by third persons, of which he (defendant) was the payee, the consideration of which was certain lands and mills purchased by the obligors of the defendant.    At the time of the assignment, a bill was pending in the court of chancery at Talladega for the enforcement of the equitable lien on the lands and mills, at the suit of the defendant.    It was stipulated by the defendant that if the property should not sell for enough under the decree in chancery to pay the specialty to the plaintiff, then he (defendant) would make good the deficiency.    Although the contract states that the defendant *transfers or indorses* the specialty, yet as it is affirmed to have been filed in the county court of Talladega, we infer that there was no indorsement in the appropriate meaning of the term.    Be this as it may, the defendant is not sought to be charged as an indorser, but on the special contract we have noticed.    An indorsement must be made on the *paper itself*, *and not* by a writing separate and distinct from it, (Gookin v. Richardson, at this term); or on another paper annexed thereto, which is sometimes necessary when there are many successive indorsements to be made.    [Chit. on Bills, 253; Story on Bills, 225.]

To entitle the plaintiff to recover, it is enough to show that a decree has been rendered in the suit in chancery, that the lands and mills have been sold under its authority, that the amount produced by the sale was not sufficient to satisfy the specialty assigned to him, and what the deficiency is. The first count alledges all this, deduces therefrom the defendant's liability, and promise to pay; and the breach, at the conclusion of the declaration, avers the non-payment of

the sums severally stated in the different counts. According to our liberal system of pleading, which regards matter of substance only, we cannot think it was necessary for the declaration to have been more full and special. Certainly it could not have been incumbent upon the plaintiff to entitle himself to an action, that he should have informed the defendant of the deficiency after a sale under the decree, and demanded payment thereof. The contract, neither in terms, nor under a proper legal interpretation, imposes such a condition, in order to make the undertaking of the defendant absolute. And certainly the rules of pleading do not require that the pleader in such case should alledge a notice, that the event has happened upon which the performance of his adversary's promise may be enforced. The defendant was a party to the suit in chancery, and is in law presumed to have been cognizant of the decree that was rendered, and of all subsequent proceedings. His knowledge upon this point will be intended to have been equal at least to that of the plaintiff; consequently, the declaration need not have alledged a notice. [Carlisle v. The Cahawba and Marion Railroad Co. 4 Ala. R. 70.]

The act of 1837 " to explain and amend the laws in relation to attachments," provides, that when a suit shall be commenced in any circuit or county court, and the defendants, or any one of them, shall abscond or secrete, or shall remove out of this State, or be about to remove out of it, or shall be about to remove his or their property out of this State, or be about to dispose of his or their property fraudulently, with intent to avoid the payment of the debt or demand sued for, on oath being thereof by the plaintiff, his agent, &c. and oath being also made of the sum due, and that an attachment is not prayed for the purpose of vexing or harrassing the defendant or defendants, it shall be the duty of the officer before whom the affidavit is made, on the plaintiff, his agent, &c. entering into bond with security, &c. in double the amount sworn to, conditioned to pay the defendant, &c. all such damages and costs as he, &c. may sustain by the wrongful suing out of the attachment, forthwith to issue the same, &c. returnable to the court in which the suit had been

Brown v. Isbell.

originally commenced, &c.; and the affidavit, bond and attachment, when returned, shall be filed with the papers in the original suit,, and shall constitute a part thereof, and the plaintiff in the suit may proceed to judgment as in other cases, and the original suit shall not be delayed. Property attached under such ancillary attachment may be replevied as in other cases, and the like consequences shall result, and proceedings be had for a failure to deliver it after judgment, &c. And the sheriff shall summon garnishees as under original attachments. [Clay's Dig. 61, § 34, 35, 36.]

A summons, or a writ of *capias ad respondendum* is not necessarily the initiatory process in a cause, but a suit may be commenced by an original attachment issued against the estate of the defendant. An attachment is extraordinary process, and when levied and returned, becomes a suit in court, and if the jurisdiction is maintainable, and the cause of action made out, the plaintiff is as much entitled to judgment as if the suit had been instituted in the ordinary mode. If then the act in question is to be literally interpreted, there is no doubt but an ancillary may succeed an original attachment, and we know of no warrant under the circumstances, for the adoption of a different rule of interpretation. It would perhaps be competent to dismiss the ancillary attachment, or quash the levy thereof, where the estate of the defendant levied on under the original attachment was unquestionably ample to satisfy the demand sought to be recovered. However this may be, if the ancillary attachment was vexatiously sued out, the plaintiff will be liable to respond to the defendant in an action for damages. There is nothing in the record to indicate that the assistant process in the present case operated oppressively or unjustly upon the defendant, or that the levy under both attachments was excessive, and if these facts were affirmatively shown, it might then be asked if the overruling a motion to quash in such case, is revisable on error. The conclusion we have expressed upon this branch of the case, is strengthened from the consideration that the attachment law is remedial—" not to be rigidly and

strictly construed;" but shall be so expounded as to afford a convenient and sufficient remedy. [See Clay's Dig. 59, § 17.]

The counsel for the plaintiff in error has not pointed out a variance between the contract declared on and that offered in evidence, and from the comparison we have given to them as copied in the transcript, we have discovered no discrepancy.

In Ansley v. Carlos, 9 Ala. 973, it was held that the original papers in a cause are not admissible evidence, if the final record has been made up by the clerk as required by the statute. I did not then express an opinion upon the point, and perhaps that case might have been disposed of without deciding it, but my brethren are satisfied that the law is there correctly laid down, the decision is therefore authoritative, and I of course acquiesce. In the case before us, it is distinctly affirmed, that the final record had been made by the register as directed by law, of the papers in the suit in chancery to which the contract declared on, referred, so that the admission of the original papers as evidence was opposed to the case cited, and consequently erroneous.

The plaintiff could not have been required to produce at the trial the bill single made by the Longs, of which he was the assignee. It does not appear that it was in his possession or under his control, nor can it be inferred in the absence of all evidence, that he withdrew it from the custody of the clerk of the county court of Talladega, with whom it was when the assignment was made. It was not the foundation of his action. He declared on a special contract in which the specialty was set out *in extenso*, with an undertaking to pay it, if the means of payment should not be procured from another source. Its production then, not being necessary to entitle him to recover, and it not appearing to have been in his possession, the court very properly refused any compulsory order requiring it to be brought into court.

The competency of Knox to prove that he was authorized to make the contract declared on, is not denied, but it is insisted by the defendant that the declarations of this agent made previous to, and simultaneous with it, are admissible to show the extent of the defendant's liability. We have re-

peatedly held, that the parol evidence of contemporaneous stipulations is inadmissible to control or vary the legal effect of a written instrument. But where the writing is incomplete, and does not profess to set out the entire contract, parol evidence has been received to prove the part omitted; and to authorize the admission of such testimony, it is said not to be necessary that the writing should expressly and directly rebut the presumption of completeness. So it has been held, that, where an executory agreement not within the statute of frauds, expresses no consideration, it is allowable to show what the consideration actually was. And where a writing has been executed by way of part performance of a parol contract, as where a chattel has been sold with warranty not in writing, and a note given for the purchase money, the parol contract is not merged in the note. All these principles have been recognized by us, as well as by English and American decisions. [See 3 Phil. Ev. C. & H's Notes, 1471 to 1476.]

In the case at bar the contract declared on does not profess to set out the consideration, but merely acknowledges that the assignor had *received value* as an inducement to enter into it. According to the principles laid down, it was clearly competent for the defendant to prove by extrinsic evidence what was the true consideration, that he might show it was insufficient, or had failed either in whole or in part, and thus defeat a recovery entirely, or *pro tanto*. If the plaintiff was informed of the agreement between the defendant and Riddle, and was merely substituted for the latter, both in respect to the consideration and the terms of the contract, we should think it would be allowable as against him, to show what the consideration was, in the same manner as if Riddle had been the party contracted with. If the transfer of the note of the Longs was received by the plaintiffs upon trust, either in whole or part for Riddle's benefit, to the extent of Riddle's interest, it would be competent for defendant to set off a demand against him, if it can be inferred that the plaintiff became the assignee under the agreement that such sets off as the defendant was the proprietor of, beyond the sum stated by Knox, (viz : six or eight hundred dollars) should be allowed. But in the absence of an

understanding upon this point, either express or implied, we think the indebtedness of Riddle to the defendant is not admissible ·as a set off to diminish the plaintiff's recovery. Whether the transaction between the plaintiff and defendant, and the statements by Knox to the former, do not warrant the inference that there was such an understanding, is a question which does not arise, and which the evidence as recited in the record would not enable us to determine.

Evidence that the plaintiff holds the specialty assigned to him in trust for another, and not in his absolute right, will not contradict the assignment—it admits and affirms it, and establishes a fact beyond and independent of it. Such evidence is admissible both on principle and authority. [3 Phil. Ev. C. & H's Notes, 1473, and cases there cited·]

It cannot be intended that the note given by Riddle to the plaintiff, was in the possession of the latter or his attorney in court, when he was called on to produce it ; if this fact had been shown, perhaps the notice at the trial would have been sufficient to let in secondary evidence of its contents upon the failure·to comply. But in the absence of proof that the note could have been produced without delaying the trial, *prima facie* the notice was insufficient. [3 Phil. Ev. C. & H's Notes, 1184 to 1186.]

There is nothing in the record to indicate that the sale of the lands and mills under the decree in chancery was void, and not such as the contract declared on contemplates. The sale must, as the defendant was the actor in the cause, have had his sanction—he should have executed a regular bond for restitution ; and if the proceedings consequent upon the decree are in any manner defective, he cannot set up the defect to defeat the plaintiff's action. The confirmation of the register's report of the sale, operated retrospectively, so that the institution of the suit between the sale and confirmation, was not premature.

The evidence recited in the bill of exceptions, does not implicate the plaintiff in a design to defraud the defendant or his attorney, and consequently the prayer for an instruction, predicated of such a hypothesis, was rightly refused.

It was not proved that Riddle had paid the plaintiff the

note which Knox testifies he gave him, and its payment cannot therefore be assumed as a fact. But if this note had been discharged, still it would be competent for the plaintiff to maintain an action for the benefit of Riddle, or whoever might be entitled to what is recovered.

What we have said will be sufficient to guide the ulterior action of the circuit court in the trial of this cause—we have seen that there was at least one error in the points presented for revision—the judgment is consequently reversed and the cause remanded.